**STORY v. UNITED STATES.**
No. 49906.

United States Court of Claims.
July 15, 1952.

---

694

--------♦--------

Grant W. Wiprud and Hugh H. Obear, Washington, D. C. (Edmund D. Campbell, Washington, D. C., on the brief), for plaintiff.

Herbert Pittle, Washington, D. C., William Amory Underhill, Asst. Atty. Gen., for defendant.

Rudolph H. Yeatman, Washington, D. C. (A. Harding Paul, Washington, D. C., on the brief), for Munsey Trust Co.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

Plaintiff sues for a real estate commission based on a sale by the Library of Congress Trust Fund Board of the premises located at 1600 I Street N.W., Washington, D. C.

The property was donated to the Board by Miss Annie Hegeman by deed dated December 20, 1938. It was later sold by the Board to Mr. Eric A. Johnston on behalf of the Motion Picture Producers and Distributors of America, Inc. On this sale the plaintiff claims a real estate commission.

The Secretary of the Treasury was the chairman of the Board and the Librarian of Congress was the secretary.

The facts are set out in detail in the findings.

It is the universal rule that an authorized real estate agent is entitled to his commission if he is the procuring cause of a sale of property. It is also the rule that he is the procuring cause of a sale when he produces a purchaser who is ready, willing, and able to purchase on terms satisfactory to the owner. These principles have been announced in numerous decisions in nearly every state of the Union.

In this case the defendant concedes liability for the payment of a commission. In fact, it has paid a commission to one of the contending parties, but with a side agreement that the Munsey Trust Company, to whom the commission was paid, will hold the Government harmless or in effect refund the commission in the event the other broker establishes his right to it.

The Government, therefore, has no interest in the result of this lawsuit. It concedes that there was a procuring cause of the sale. The question now is, therefore, as to whether the plaintiff or the Munsey Trust Company is entitled to the commission, the Government having conceded that one or the other is entitled thereto.

This is peculiarly a case in which substantially just results would have been achieved by dividing the commission. Since this was not done we are confronted with the proposition of determining which of the two claimants is entitled to the commission. We quote from Restatement of the Law of Agency, Ch. 14, Sec. 448(e), as follows:

"*Where more than one broker is employed.* If the owner of property employs two or more brokers, not contracting that any of them shall have an exclusive agency or power, the broker who first secures the serious attention of the customer ordinarily is entitled to the commission * * *."

It is also stated that if the first broker does not continue active negotiations and a second broker is employed and his work is predominant, he may be entitled to the commission.

We also quote from 3 C.J.S., Agency, § 185(c), as follows:

"If the agent is the procuring cause of the transaction which he was authorized to negotiate, he is entitled to his commission irrespective of the fact that the principal himself, or through others, may have intervened and actually completed the final act of the negotiation. Accordingly an agent who was the procuring cause of the transaction is entitled to his commission irrespective of the fact that it was consummated by the principal, that he was not personally present when it was entered into, that it was consummated without his knowledge, or that he did not personally see or talk to the other party entering into the transaction.

"If the agent is the originating cause which ultimately leads to the conclusion of the transaction, he is the procuring cause of the transaction and he is entitled to his compensation thereon. * * *"

Numerous cases are cited sustaining the text.

In the light of these stated principles which of the two claimants was the procuring cause of the sale.

The plaintiff was the first to be employed in connection with the prospective sale of the property in question. Soon after the gift of the property by Miss Hegeman to the Congressional Library on December 20, 1938, plaintiff was verbally authorized by Dr. Putnam, who was the Librarian of Congress and a member of the Trust Fund Board, to offer the property for sale.

On February 13, 1939, Dr. Putnam wrote the plaintiff enclosing a statement signed by himself, reading as follows:

"At a meeting of the Trust Fund Board on December 22, 1938, at which the gift from Miss Hegeman of the premises at the corner of 16th and Eye Streets was accepted, it was voted that, in association with Dr. Miller of the Board, I was to deal with any inquiries looking to a purchase of the property, and consider any offers for it. "I see

no reason why you should not continue your interest in such a possible disposition, retaining your sign upon the premises and communicating to me any offers or suggestions."

The plaintiff was authorized by three different Librarians to endeavor to secure a purchaser for the property. He first brought it to the attention of Mr. Johnston or his representatives. He was the only one who showed the property to Mr. Johnston's secretary and representative. He furnished floor plans and description. He at all times kept a "For Sale" sign on the property. He at all times told Mr. Johnston factually the attitude of the Board.

Mr. Chapman, an employee of the Munsey Trust Company, wrote Mr. Johnston mistakenly stating that the property could be purchased for materially less than the Board was willing to take. His assigned reason was that he had talked to the executive assistant and a Mr. Rogers at the Library and that they had advised him to that effect. They apparently had no authority to speak for the Board. But Mr. Chapman made the flat statement that the substantially lower offer would be acceptable.

Naturally a prospective purchaser would listen more sympathetically to an offer by Mr. Chapman that was apparently $100,000 less than that which plaintiff had indicated the purchase price would be. However, the Board had not authorized Mr. Chapman to make any $400,000 offer. Neither the Munsey Trust Company nor Mr. Chapman was ever given written authority to offer the property for sale, but the action of the officials of the Library Trust Fund amounted to an acceptance of the Munsey Trust Company as an additional broker.

The sale was finally made by direct negotiation, and consummated about January 1, 1946. The sale price was $600,000.

Both the plaintiff and the Munsey Trust Company submitted their respective claims to the Board for a real estate broker's commission. The Munsey Trust Company submitted a letter outlining its activities. The plaintiff did not outline his activities in connection with his claim. The commission

was paid to the Munsey Trust Company, subject to the indemnity to which we have referred.

Both claimants did work in connection with the sale of the Hegeman property. The plaintiff was the first authorized broker. The Munsey Trust Company became active in connection with the property in 1942. Both brokers offered the property to other customers. Both brokers were licensed real estate dealers. Mr. Chapman for the Munsey Trust Company was very active in 1945 in his efforts to interest Mr. Johnston, but both brokers continued their efforts to interest him until the time the sale was consummated.

During the course of the negotiations there were a number of changes in the membership of the Board, and no doubt the ones who finally took action were not familiar with the entire transaction at the time they paid the commission.

When all the facts are laid alongside each other, we conclude that both claimants contributed materially to the final result, and together were the procuring cause of the sale; that plaintiff's efforts contributed fully as much as the Munsey Trust Company's, and that each was entitled to one-half of the commission.

The plaintiff is entitled to recover from the defendant the sum of $9,500, and the defendant is entitled to recover from the third party defendant, the Munsey Trust Company, the sum of $9,500, in accordance with the indemnity agreement.

It is so ordered.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.